IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number:

REGENTS OF THE UNIVERSITY OF COLORADO,
a body corporate,

      Plaintiff,

v.

AMGEN INC.,
a Delaware corporation,

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Regents of the University of Colorado ("Plaintiff"), by way of its

Complaint against Defendant Amgen Inc. ("Defendant"), alleges as follows.

## <u>INTRODUCTION</u>

1. Pursuant to a License Agreement between the parties' predecessors and

assignors, for over two decades, Plaintiff has provided the exclusive rights to its valuable

research and patents to Defendant for the sale and marketing of the pharmaceutical drug

Anakinra, sold under the brand Kineret, that is primarily used to treat adults with moderate to

severe active rheumatoid arthritis.

2. In exchange, Defendant agreed to pay Plaintiff royalties on the income it

earned from its and its sublicensee's sales of Kineret.

3. Upon information and belief, Defendant and its sublicensee have achieved sales of

Kineret approaching a billion dollars.

4.      Despite achieving substantial success with Kineret, Defendant has recently taken action contrary to the terms of the License Agreement, including at least, refusing to pay Plaintiff more than a million dollars owed under the License Agreement, and unreasonably capping the amount of monies due and owing to Plaintiff.

5.      This lawsuit seeks to enforce and protect Plaintiff's rights.

## THE PARTIES

6.      Plaintiff is a body corporate located at 1800 Grant Street, Denver, Colorado 80203.

7.      Upon information and belief, Defendant is a corporation organized under the laws of the State of Delaware with a principal place of business located at One Amgen Center Drive, Thousand Oaks, California 91360.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 as a civil action between citizens of different states where the amount in controversy exceeds the sum or value of $75,000.00.

9.      This Court has personal jurisdiction over Defendant because it consented to the personal jurisdiction of this Court in the License Agreement.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District and because the parties agreed that any dispute arising under the License Agreement shall be resolved in federal court located in Colorado.

## FACTUAL ALLEGATIONS

**Plaintiff Licenses Valuable Research to Synergen in Exchange for Royalties**

11.     In the 1980's, scientists and faculty working at or for the University of Colorado conducted research in inhibitors of interleukin-1 and interleukin-1-like factors and the physiological effects and potential application as therapeutic agents.

12.     In January 1987, Plaintiff and the University of Colorado Foundation, Inc. (the "Foundation") entered into a Research Agreement with a Colorado-based company, Synergen, Inc. ("Synergen"), under which Synergen would sponsor further research in inhibitors of interleukin-1 at the University of Colorado (the "Research") and for Synergen to collaborate with the University in such Research.  The Research Agreement further granted Synergen the option to acquire an exclusive license to inventions resulting from the Research.

13.     As a result of the Research, certain patent applications were filed and, after many years of prosecution, patents issued, including U.S. Patent No. 6,559,873 which is valid and enforceable until July 29, 2020.

14.     In order to capitalize on the value of the Research, and bring a drug to market, Synergen sought to receive a license from the Foundation in exchange for reasonable consideration.

15.     As such, the Foundation entered into a License Agreement with Synergen dated May 19, 1989.

16.     A copy of the executed License Agreement is filed herewith as Exhibit A.

17.    Pursuant to Section 4(a) of the License Agreement, the Foundation granted Synergen the exclusive, worldwide license to practice the Research Technology[1] and to make, have, made, use and sell Licensed Products (the "License").

18.    Ultimately, the Research resulted in Anakinra (branded "Kineret"), which was initially indicated for the management of signs and symptoms of rheumatoid arthritis as well as the inhibition of the progression of structural damage associated with rheumatoid arthritis in adults.

19.    The License granted to Synergen included the right to grant sublicenses.

20.    In exchange for and in consideration of the License, Synergen agreed to pay the Foundation royalties on Synergen's Product Revenues with respect to the sale of Licensed Products.

21.    The License Agreement specifies three different categories of royalty payments, namely Synergen must pay the Foundation:

- One percent of all Net Sales by Synergen to independent third parties (other than sublicenses) of each Licensed Product;

- Three-fourths of one percent of all Net Sales received by Synergen as a result of sales of Licensed Products to Synergen's sublicensees; and

- Two percent of all Royalty Income from licensing of each Licensed Product.

---

[1]    Unless otherwise specifically defined or noted herein, capitalized terms used in this Complaint shall have the same meaning as in the License Agreement.

22.     Section 9 of the License Agreement grants Synergen the ability to assign its rights and duties under the License Agreement, but only after Synergen obtains written consent from the Foundation.

**Plaintiff Assumes the Rights Under the License Agreement**

23.     After execution of the License Agreement, the University of Colorado's Technology Corporation (the "UTC") obtained all rights and interests therein from the Foundation.

24.     In 2002, after providing notice to Defendant in 2001, the UTC transferred its rights and interests in the Licensing Agreement to Plaintiff.

**Synergen Becomes Defendant, Makes & Sells Kineret**

25.     Upon information and belief, in December 1994, a subsidiary of Defendant acquired Synergen.

26.     Consequently, upon information and belief, Synergen became a wholly owned subsidiary of Defendant and was renamed Amgen Boulder Inc.

27.     Upon information and belief, Amgen Boulder Inc. therefore assumed all rights and obligations under the License Agreement.

28.     Upon information and belief, in December 1997 Amgen Boulder Inc. merged with and into Defendant (collectively, with Amgen Boulder Inc., "Amgen").

29.     As a result, upon information and belief, Defendant assumed all rights and obligations under the License Agreement.

30.     Under the License, Amgen developed, manufactured, marketed and sold Kineret.

31.     Kineret constitutes a Licensed Product as defined in the License Agreement.

32.     Amgen had the exclusive right to manufacture and sell Kineret until December of 2008.

**Defendant Sublicenses with Sobi**

33.     Upon information and belief, on September 12, 2008, Defendant exercised its sublicensing right under the Agreement and entered into a sublicensing agreement with Biovitrum AB (the "Sublicense").

34.     Upon information and belief, Biovitrum AB acquired Swedish Orphan Holding International AB in 2010 and became Swedish Orphan Biovitrum AB ("Sobi").

35.     As a result, upon information and belief, all rights and obligations under the Sublicense were assigned or otherwise transferred from Biovitrum AB to Sobi.

36.     Upon information and belief, in the Sublicense, Defendant granted Sobi the worldwide exclusive right to manufacture, sell and promote Kineret within the fields of rheumatoid arthritis and four other orphan drug indications, including Cryopyrin Associated Periodic Syndrome ("CAPS").

37.     In exchange, upon information and belief, Sobi agreed to pay Defendant royalties based on Sobi's achievement of specific milestones in sales of Kineret.

**Sobi Acquires Full Rights To Kineret and Achieves a $650 Million Sales Milestone; Defendant Refuses to Pay Plaintiff Royalties on Sobi's $55 Million Payment to Amgen**

38.     In early 2013, Sobi announced that the U.S. Food and Drug Administration ("FDA") had approved Kineret for the treatment of children and adults with neonatal-onset

multisystem inflammatory disease ("NOMID"), the most severe form of CAPS.  Kineret

thereby became the first and only FDA-approved therapy for NOMID.

39.     Next, in September of 2013, Sobi announced that it had acquired from

Defendant the full right to develop and commercialize Kineret for all therapeutic indications.

40.     Upon information and belief, in the fourth quarter of 2012, Sobi achieved a

milestone of $650 million in sales of Kineret.

41.     Shortly thereafter, upon information and belief, in the first quarter of 2013,

Sobi made a $55 million payment to Defendant(the "Sobi Royalty Payment").

42.     Upon information and belief, the Sobi Royalty Payment is directly tied to, and

dependent and based upon, Sobi's sales of Kineret.

43.     Indeed, Sobi has stated publicly in several financial reports that sales of

Kineret triggered Sobi's obligation to make the Sobi Royalty Payment to Defendant.

44.     For example, in its 2012 Annual Report, Sobi publicly acknowledged that the

sales volume for Kineret triggered Sobi's obligation to make the Sobi Royalty Payment to

Defendant.

45.     An excerpt from Sobi's 2012 Annual Report is filed herewith as Exhibit B.

46.     In its Interim Report for the First Quarter of 2013, Sobi again represented to

the public that the $55 million Sobi Royalty Payment to Defendant was triggered by the sales

volume for Kineret.

47.     A copy of Sobi's 2013 First Quarter Interim Report is filed herewith as

Exhibit C.

48.     The Sobi Royalty Payment paid by Sobi to Defendant constitutes Royalty Income to Defendant as defined in the License Agreement.

49.     Despite repeated demands by Plaintiff, Defendant refuses to pay Plaintiff royalties owed under the License Agreement on the Sobi Royalty Payment.

**Defendant Settles a Class Action Suit By Relying Upon and Benefitting From the License Agreement**

50.     In response to demands from Plaintiff regarding monies owed on the Sobi Royalty Payment, Defendant has represented that, contrary to Sobi's statements to the public, the Sobi Royalty Payment does not constitute Royalty Income under the License Agreement, but rather is a payment relating to a settlement obligation payable by Amgen and does not relate to Defendant's License.

51.     In 1995, Amgen Boulder Inc. was sued in a class action in the United States District Court for the Western District of Washington for alleged violations of federal and state securities laws, RICO, the Consumer Protection Act and various other common law claims (the "Class Action Lawsuit").

52.     To resolve the claims alleged in that litigation, Amgen entered into a Settlement Agreement and Release dated February 6, 1997 ("Settlement Agreement"), and a Supplement thereto dated December 2, 1997 ("Supplement") with the two named class representatives, through their counsel Tousley Brain, P.L.L.C. ("Tousley Brain"), on behalf of the plaintiff class in the Class Action Lawsuit.

53.     A copy of the 1997 Settlement Agreement is filed herewith as Exhibit D.

54.     A copy of the 1997 Supplement is filed herewith as Exhibit E.

55.     Section 1(c) of the Supplement required Amgen to make a "Revenue Payment" of $55 million if cumulative "Revised Product Revenues" exceeded $650 million prior to December 31, 2020 (the "Settlement Royalty Payment").

56.     The Supplement defines "Revised Product Revenues" to include monies earned based on the sale of "Revised Product."

57.     Kineret falls within the definition of a "Revised Product" in the Supplement.

58.     "Revised Product Revenues" as defined in the Supplement include revenues earned from the sale of Kineret.

59.     On February 27, 2013, Amgen informed Tousley Brain that cumulative Revised Product Revenues exceeded $650 million thus triggering Amgen's obligation to pay the $55 million Settlement Royalty Payment under Section 1(C) of the Supplement.

60.     A copy of the February 27, 2013 communication from Amgen to Tousley Brain is filed herewith as Exhibit F.

61.     In the February 27, 2013 communication, Amgen informed Tousley Brain that the $650 million sales milestone was achieved by sales made by Sobi as Amgen's licensee.

62.     Shortly thereafter or concurrently with the February 27, 2013 letter, upon information and belief, Defendant made the Settlement Royalty Payment as required by the Settlement Agreement as follows: (1) $50,000,000 to a settlement fund established as a result of the Class Action Lawsuit; (2) $5,000,000 to Tousley Brain.

**Defendant Agrees to a Cap on Sobi's Royalty Obligations, Depriving Plaintiff of Royalties Under the License Agreement**

63. As stated above, Defendant and Sobi also amended their Sublicense arrangement in 2013 (the "Amended Sublicense").

64. In addition to the full grant of rights to Kineret discussed above in paragraph 33, upon information and belief, pursuant to the Amended Sublicense, Defendant and Sobi agreed to restructure the means by which Sobi paid Defendant for its sales of Kineret.

65. Upon information and belief, the Amended Sublicense replaced Sobi's previous milestone payment obligation (arising out of the 2008 Sublicense) with an obligation by Sobi to pay Defendant a royalty based on net sales of Kineret ("Net Sale Royalty").

66. Upon information and belief, Sobi's Net Sale Royalty obligation began on October 1, 2013.

67. Upon information and belief, Defendant further agreed in the Amended Sublicense that Sobi's obligation to pay royalties to Defendant for sales of Kineret would be capped at $55,250,000 (the "Cap").

68. Because Plaintiff's right to receive royalty payments is partly based upon Defendant receiving royalty payments from any sublicensees as contemplated by the License Agreement, Defendant's agreement to the Cap deprives Plaintiff of royalties otherwise owed under the License Agreement.

69. Upon information and belief, Defendant also entirely assigned its obligation to pay Plaintiff royalties under the License Agreement to Sobi in the Amended Sublicense.

70. Defendant did not obtain Plaintiff's prior written consent to such an assignment to Sobi.

71. Because Defendant did not contain Plaintiff's prior written consent, the assignment to Sobi is in violation of the License Agreement.

**Defendant Refuses to Provide Plaintiff its Agreements with Sobi**

72. After learning of the $55 million Sobi Royalty Payment, Plaintiff has repeatedly demanded that Defendant pay Plaintiff the royalties owed under the License Agreement and specifically requested that Defendant provide Plaintiff with copies of its agreements with Sobi.

73. Defendant has refused to provide Plaintiff with copies of any agreements with Sobi.

74. In response to Defendant's refusal to provide copies of its contracts with Sobi, Plaintiff proposed the engagement of an independent auditor to review Defendant's records in this matter.

75. Defendant insisted that, before reviewing any of Defendant's records, such an auditor must agree not to divulge any information revealed or contained therein to Plaintiff.

76. To date, Defendant refuses to provide Plaintiff with its agreements with Sobi and records concerning its relationship with Sobi and refuses to pay Plaintiff any of the royalties owed.

## COUNT ONE
## Breach of Contract

77.     Plaintiff repeats and incorporates the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

78.     The License Agreement constitutes a valid and enforceable contract between Plaintiff and Defendant.

79.     Plaintiff performed each and all of its obligations under the License Agreement.

80.     Defendant has breached the License Agreement by failing to pay Plaintiff royalties on the Sobi Royalty Payment.

81.     As a direct and proximate result of Defendant's breach of contract, Plaintiff has incurred damages in an amount to be determined at trial.

## COUNT TWO
## Unjust Enrichment (In the Alternative to Count One)

82.     Plaintiff repeats and incorporates the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

83.     At Plaintiff's expense, Plaintiff conferred a benefit on Defendant when it granted Defendant the exclusive, worldwide License in exchange for royalties.

84.     If Defendant structured its transaction or agreement with Sobi such that the Sobi Royalty Payment somehow does not constitute Royalty Income under the License Agreement, then Defendant's retention of the benefit of the License without payment of royalties to Plaintiff on the Sobi Royalty Payment would be unjust.

85.     Defendant's wrongful conduct has caused Plaintiff to sustain damages in an amount to be determined at trial.

## COUNT THREE
## Breach of Contract

86.     Plaintiff repeats and incorporates the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

87.     Defendant breached the Agreement by assigning its obligation under the License Agreement to pay Plaintiff royalties to Sobi without the prior written consent of Plaintiff.

88.     As a direct and proximate result of Defendant's breach of contract, Plaintiff has incurred damages in an amount to be determined at trial.

## COUNT FOUR
## Breach of the Implied Covenant of Good Faith and Fair Dealing

89.     Plaintiff repeats and incorporates the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

90.     The License Agreement gives Defendant the discretion to grant a sublicense.

91.     Plaintiff depended on Defendant to exercise that discretion in good faith and consistent with justified expectations of Plaintiff.

92.     Defendant violated its discretion in sublicensing when it agreed to the Cap, which deprives Plaintiff of the value of the License.

93.     Defendant's wrongful conduct has caused Plaintiff to sustain damages in an amount to be determined at trial.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands that a judgment be entered against Defendant granting the following relief:

A.　　The Court enter judgment in favor of Plaintiff and against Defendant and award Defendant damages in an amount to be determined at trial;

B.　　The Court award Plaintiff interest and reasonable attorneys' fees, costs and expenses as provided by law; and

C.　　The Court enter an order granting Plaintiff such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

Dated:  September 16, 2015.

s/ *Evan M. Rothstein*
Evan M. Rothstein
Kerry LeMonte
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432
Telephone: 303.223.1100
Email: erothstein@bhfs.com
Email: klemonte@bhfs.com
*Attorneys for Plaintiff*
*Regents of the University of Colorado*

Plaintiff's Address:
1800 Grant Street
Denver, Colorado 80203